NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—February, 1883.

SLACK v. WIGGIN.

*In the matter of the estate of* JAMES W. GERARD, *de-
ceased.*

Testator, by his will, gave to his infant grandson, W., "the sum of five
thousand dollars in good notes and mortgages." After testator's
death, W. came of age, and, a few weeks later, received from a clerk
of the executors, whom the will made also his guardians, two mort-
gages upon real property in Massachusetts, for the amount bequeathed,
without inquiry or representations as to their value, and gave a re-
ceipt in full for his legacy. One of the mortgages, however, was not
good, but bad, the interest being in arrears, the land deficient in
value, and the mortgagor irresponsible; upon learning which facts
from the executors' agent, W., in accordance with the latter's advice,
approved by one of the executors, took a deed of the property, and
released the mortgagor. The land yielding no income, and proving
unsaleable, W., after five years, conveyed to the executors, receiving
other assets from them, and giving them a bond to secure them upon
their accounting. Thereupon, certain residuary legatees contended
that W. had been guilty of laches.—

*Held,* that, under the circumstances, W. was not originally put upon
inquiry as to the value of the securities, having a right to rely on the
judgment and good faith of the executors; that, it not appearing that
he was advised of his *rights* until shortly before he demanded a read-
justment of the executors, he could not be said to have slept thereon;
that the indemnity bond should be surrendered to him, the executors
be credited with the assets transferred to him on the readjustment,
and he be allowed interest on the portion of his legacy of which he was
for a time deprived, together with his disbursements for taxes, and
attorney's fee for searching title.

Disbursements made by executors in good faith, and for the apparent in-
terest of the property of the estate, *e. g.,* for procuring free ferries
in its locality, may be allowed upon their accounting, although no dis-
tinct authority for the expenditure is contained in the will.

Adair v. Brimmer, 74 N. Y., 539—followed.

JUDICIAL settlement of the account of James N. Platt

and James W. Gerard, as executors of decedent's will. A contest arose between Mary D. B. Slack and another, residuary legatees, and F. H. Wiggin, over payments made to the latter on account of a legacy to him, and other questions were raised; the facts as to which appear sufficiently in the opinion.

JOHN N. BOWERS, *for executors.*

H. KETTELL, *for F. H. Wiggin.*

C. H. YOUNG, *for Mary D. B. Slack and another.*

THE SURROGATE.—In September, 1881, certain issues arising upon the accounting of this decedent's executors were submitted to a referee. His report, to which certain exceptions have been interposed, is now before the court.

One of the provisions of the testator's will is the following: "I give and bequeath to my grandchild, Frederick H. Wiggin . . . the sum of five thousand dollars, in good notes and mortgages."

When Mr. Gerard died, Frederick H. Wiggin was a minor. He became of age in December, 1874, and, a few weeks later, received from Mr. Boswell, a clerk or agent of the executors (who were by the will made his guardians and trustees), two mortgages upon certain real estate in East Boston, Massachusetts. He thereupon gave to the executors a receipt in full for his legacy under the will. Each of these mortgages was originally for $3,250, but upon one of them there was due, at the time of the transfer, only $1,750. Mr. Wiggin was summoned by Mr. Boswell to come to the office of the exec-

utors for the purpose of receiving his legacy, and attended there alone for that purpose.

The executors and trustees seem to have previously set apart for him the particular mortgages which were then put in his hands. At the time of the delivery, no inquiry was made by him respecting the value of the property thus transferred, nor were any representations made to him in that regard.

This was the fact, however,—that, in the payment of interest upon the $3,250 mortgage, there had been, for more than six months, a default, of which the legatee did not at the time have knowledge.

He was told that Mr. Blaney, who had for several years acted as the testator's agent and as agent of his estate, in respect to property in Boston, would see to the payment of interest on the mortgages. Upon applying to Mr. Blaney, he learned that no interest had been paid on the $3,250 mortgage since that which fell due in March, 1874; that the maker of the mortgage-note was utterly irresponsible; that a judgment against him would be profitless; that the land was not worth the amount of the incumbrance upon it, and that, to save foreclosure expenses, it would be expedient to take a deed of the property. These things, which Mr. Wiggin learned from Mr. Blaney, he soon afterward told to one of the executors, who declared his approval of the course that Mr. Blaney had recommended.

Thereupon the title was examined, the conveyance was made, and the claim against the maker of the note was thereby released. The property in question brought no income to its new owner. After unsuccessful efforts to sell it, he conveyed it, in the year 1879, to the executors,

receiving from them in return certain other notes and mortgages, together with a sum of money.   At the same time he gave them a bond, to indemnify them in the event that, upon this accounting, the Surrogate should not ratify their action in making the readjustment.

It is insisted by certain residuary legatees that, because of the long neglect of Mr. Wiggin to assert his claims, he should now be obliged to content himself with the mortgage which he originally received, and especially so in view of the fact that, by his releasing from liability the maker of the note, it has become impossible, as they claim, to restore the parties interested to the same condition in which they were before he took title.

But I have concluded, not without hesitation, that this contention cannot be sustained.   Mr. Wiggin was entitled, under the will, to receive his legacy in "good notes and mortgages."   Now, one of the notes and mortgages delivered to him was not good, but bad.   It was received by him when he had just come of age, and without information of its inferior character.   I do not think that, under the circumstances, he was put upon his inquiry as to whether it was or was not worth what purported to be its value.   He might very properly have relied upon the judgment and the good faith of the executors.   With one of them, when he had learned the true state of the case, he seems to have conferred, and the suggestions of that conference were in accordance with the course previously advised by Mr. Blaney, and subsequently pursued by himself.   At that time, certainly, the executors could, without detriment to the rights of any other persons interested in the estate, have somehow made up to him the

difference between the real value of his mortgages and the sum of $5,000 given him by the will.

While it. is probably true that, at the time he took the deed referred to, he knew all the *facts* which are here under consideration, it does not appear that he became advised of his *rights* in the premises, until shortly before he demanded of the executors to make good to him the deficiency in the payment of this legacy.  Nor does it appear that, since he has known his rights, he has slept on them.  He cannot justly be said, therefore, to have acquiesced in the original settlement, within the proper legal sense of that term.

The doctrine stated by the Court of Appeals in Adair v. Brimmer is applicable, it seems to me, to the present contention.  " To establish a ratification by a *cestui que trust*," says the court in that case, " the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also, in a case like the present, that the *cestui que trust* was fully apprised of the *effect* of the acts ratified, and *of his or her legal rights in the matter.*  Confirmation and ratification imply, to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it.  *The cestui que trust must, therefore, not only have been acquainted with the facts, but apprised of the law—how these facts would be dealt with by a court of equity.*  All that is implied in the act of ratification, when set up in equity by a trustee against his cestui que trust, must be proved, and will not be assumed.  The maxim ' *ignorantia legis excusat neminem,*' cannot be invoked in such a case.  The *cestui que trust* must be shown to have been

apprised of his legal rights" (Adair v. Brimmer, *74 N. Y., 539–554*).

" Where *cestuis que trust*, after they become of age, or in any other mode competent to release the previous default of the trustees, do any act which would ordinarily have that effect between other parties, it will not be so regarded unless the trustees had fully informed the *cestuis que trust* of their rights, or they acted under full knowledge of the liability of the trustees" (1 Story's Eq. Jur., *12th ed., § 322*).

" It can never be maintained that the acquiescence of a party, under ignorance of his rights, operates as a waiver of any claim, or as a confirmation of anything done against him" (Bennett v. Colley, *2 Mylne & Keen, 225*).

Even if it is true, as claimed by the residuary legatees, that this estate has suffered a loss by reason of the release of the mortgagor by Mr. Wiggin, adherence to the principle declared in Adair v. Brimmer, seems to require my approval of the executor's readjustment of his claims. But it is by no means apparent that the estate has sustained any actual injury whatever. My conclusion is that the bond of indemnity should be surrendered to Mr. Wiggin, and that the executors should be credited with the mortgages transferred to him and the cash paid him upon the resettlement of his demands as legatee. He now asks, also, for the payment of interest on such portion of his legacy as he was not permitted to enjoy while he held the Boston mortgage. This is allowed, together with the amount he disbursed as taxes, and $40 which he paid to his attorney for searching title.

Of course, his objection to the conduct of the executors

in respect to the Mary D. Buckley legacy cannot be sustained.

The sums disbursed for the purpose of procuring free ferries in Boston were expended in good faith for the apparent interest of the estate, and were evidently such as would have met the approval of the testator himself. While the will does not distinctly give authority for the particular expenditure which was made by the executors, I do not think that, under all the circumstances, the objection to those items should be sustained.

The report of the referee, modified as above indicated, is confirmed.